Good morning, judges. May it please the court, I'm Matthew Girardi on behalf of plaintiffs, appellants Nassim and Pupak Bayat and the Nascent Family Trust. I'm going to be very brief and reserve whatever remaining time I have for questions from the panel and rebuttal. The crux of this appeal can be summarized in the appellee's mischaracterization of the statement of this case. This is not, as they allege, a case of a failed investment scheme. This is a case of a very successful Ponzi scheme. And in that distinction, it's apparent that the defendants, and not CBRE but the collateral defendants, avoided service and evaded justice just long enough for summary judgment to be granted by the trial court. And as a result of this distinction, appellants believe the district court abused its discretion in not granting us more time to depose defendant Ms. Iraka in order to oppose their motion for summary judgment. Counsel, the district court found that although some of the delay was caused by the evasiveness of the witness, that the delay was primarily due to your client's lack of diligence in pursuing the case. Why is that finding clearly erroneous? That finding is clearly erroneous because with the exception of my traveling to Mr. Ms. Iraka's home and dragging him from his home to a court reporter and deposing him at that time, this evidence would not have come to light. Mr. Ms. Iraka was fearing an attempt to find an adequate criminal defense lawyer, and he had been in hiding for that time. Mr. Ms. Iraka allowed a default judgment to be entered against him in this case, evidencing the fact that Mr. Ms. Iraka was not going to appear before this court for any purpose. Well, the court relied in part on the fact that you were your predecessor in interest as counsel. I'm not sure who. There was a period of time that followed the conversations between counsel at which it was decided that he would appear for his deposition. And in spite of that, there was a further delay. And that is, I think, in part what the district court was relying upon. That further delay, Your Honor, was solely as a result of Mr. Ms. Iraka's civil attorney being engaged in another matter. And that was submitted in declaration by his civil attorney to the court, indicating it was his unavailability that delayed the deposition. Anything further, counsel? Not at this time. Let me ask you this. Oh, question. With respect to CBRC, CBRE, what are they doing in this lawsuit? Mr. Ms. Iraka was employed by CBRC. Sure, but the CBRC, Richard Ellis, is a commercial real estate broker. You're not telling me that Richard Ellis was in any way involved in floating these bonds. Absolutely not, Your Honor. They were in no way involved in. Then what are they doing in this case? They were, Mr. Ms. Iraka represented the plaintiffs within the course and scope of, while he was with Richard Ellis, he was assisting them in separate and individual investments. And within the course and scope of that representation, he advised these plaintiffs to not purchase real property, but to invest in these bonds. Which was not CBR, not Richard Ellis' business. Well, I disagree. CBR Richard Ellis holds themselves out as having expertise in investments, not simply real estate investments. And it was that broad representation that they hold themselves out as investment experts, whether it be in real property or anything else, that my clients relied on those representations. And where is the proof of that on the motion of summary judgment? No, there was not. So what are the issues, the tribal issues, the fact that in your view the Ms. Iraka deposition would create? Whether or not Mr. Ms. Iraka made intentional misrepresentations of fact within the course and scope of his employment with CBRE and his simultaneous agency relationship with the plaintiffs. And whether he in fact intended to have the plaintiffs rely on his misrepresentations and invest in this Ponzi scheme. Thank you, counsel. You have reserved time. Thank you. We'll hear from CBRE. Good morning, Your Honors. Matt Kleiner on behalf of the appellee CBRE. We request that this Court affirm the judgment of the trial court for two reasons. First, there was no abuse of discretion with respect to denying the motions under Rule 56 and Rule 60. And for the second reason, that there was no prejudicial error. With respect to there not being any abuse of discretion, the Court has honed in on one of the major issues in this case, is where did the delay come from? Counsel was aware that Mr. Murasaka was the linchpin, the most important person to their case. And in fact, as they have said in their briefs, the only person that can tie together these issues. But yet, after they became aware of his presence, had served him with process, had spoken to his counsel, and had been served with the motion for summary judgment, they didn't notice his deposition. They waited until the date... For how long, between the time counsel knew of his importance to the case until the notice of deposition went out? There was two requests for continuance. The first request was granted on January 23rd. At that time, there was no comments in the declarations about Mr. Murasaka being represented. On February 6th, there was a two-week period where nothing had happened, and that's when the second deposition... I'm sorry, it's when the opposition to the motion for summary judgment based on the continuance was due. So the... I need to double-check on the record as to when the actual deposition notice went out, but he wasn't deposed during that time, and I believe he wasn't... Well, two weeks isn't very long. That's why I'm asking, what are the passages of time that we should be thinking about here? What are the chunks of time? Do you mind if I grab the record real quick? I know. I'll give you the precise date. The motion for summary judgment was filed on January 12th, 2012. Correct. On February 1st was the first grant of the continuance. Because of the work that counsel had on another case. Correct. On February 6th was the date that the motion was continued until, and no opposition was filed during that time. Thank you. Did the original complaint assert that Mr. Mizuraka was the person who... I know he was a defendant, but was he alleged to be the person who sold them the bill of goods, so to speak? Yes, Your Honor, the original complaint did. Okay, so that was back in 2010. And so your contention is that between 2010 and 2012, he was impossible to find for a period of time, correct? That's correct, Your Honor. And there was finally substitute service in late 2011. On November 23rd, 2011, the substituted service was taken into effect. And there was a default judgment taken against him, right? That's correct, Your Honor. So when do you contend that the plaintiffs first could have successfully taken his deposition, given that he couldn't be found presumably until the end of 2011? Well, worst case scenario, on November 23rd, when they substituted, they served him via substituted service, they could have noticed his deposition at that point. Right, but you can't take a deposition of, you can take a default judgment against somebody you can't find, but it's pretty hard to take their deposition if they're not there. Well, they have him. They have served him with a complaint. They could have served him with a subpoena as well as a third-party witness. He didn't have to be a party to be deposed in the case. No, no, I'm making it, my question is different, though. It's a practical question. Is your claim that they should have tried earlier or that they could have succeeded earlier in taking his deposition? Certainly the former, in that they could have tried earlier. As soon as they received the motion for summary judgment, knowing that Mr. Mirasaka was the most important person to their case, they should have immediately taken efforts to depose him. And that was in January of 2012. No efforts were taken. There was a request for a continuance based on counsel's unavailability. In that request, there was no mention of Mr. Mirasaka's presence or need to depose him. The entire time passes for an opposition to be filed. Then on the last day that the opposition is due, this is a continued opposition on February 6th, they come in and say, now we've noticed the deposition for the first time. That could have been done much earlier. And I think it would be a different story had they come to the court in advance and said, we've sent a deposition notice or we've provided a subpoena on him and he failed to appear for his deposition. But his deposition was even set until February 22nd, which was much after the both of the continuances to the motion for summary judgment. In addition to the delay in the amount of time it took to notice the deposition, there's also a significant factor is that under Rule 56, you can't just come to the court and ask the court for continuance based on the fact that you need to do additional discovery. There's certain requirements that are built into that motion where you have to specifically show what evidence that you hope to gain by deposing or by performing this particular discovery and how that evidence is going to defeat the motion for summary judgment. If you go back and look at the request for a continuance, that position was never made, never made properly in any of the requests for continuance, which is further grounds in and of itself for the court to deny the motion under Rule 56. Counsel, what's your response to counsel's explanation of the triable issues that would have emerged from the deposition? Well, first of all, they did take the deposition of Mr. Mayorsaka and lodged it with the court, but they didn't present any facts from that deposition to the trial court or even to this court in their appellate briefs as to how any evidence or facts from that deposition made their claims meritorious, which is a required requirement. Well, you heard what Mr. Girardi had to say in response to that question. What is your response to his explanation? My response to that is CBRE does not issue, it's a real estate investment firm, it does not issue securities, it does not have a license to do so. The fact that Mr. Mayorsaka recommended that the appellants invest in 4X bonds is something that is wholly and completely outside of CBRE's benefit. There is a declaration submitted from CBRE in support of its motion for summary judgment, which was unopposed, explaining that CBRE is unaffiliated with First Fidelity, had no benefit whatsoever in issuing, in the appellants investing in these bonds with First Fidelity, and is actually detrimental to their own investment platform, because Mr. Mayorsaki's recommendation was to invest in something outside of what CBRE does. So if I understand your position correctly, it is that there may have been issues of fact, but none of them bore on your client's potential liability. They bore on his individual liability and perhaps that of other defendants, but not your client. That's correct. There's no tribal issues of fact as to CBRE in this case. And the trial court correctly granted summary judgment on those grounds. And the last point I'd just like to make quickly goes to the prejudicial error. The appellants have not made any argument in their briefs that the denial of the Rule 60 motion caused them any prejudicial error. They don't show that had the court, even assuming that the court had abused its discretion in making those decisions, they don't come to this court and say how it mattered, how did it make a difference. And ultimately, they didn't present any new evidence after they took the deposition of Mr. Mayorsaki in either the opening briefs or to the trial court that make any difference and would have led the trial court to have issued a different ruling in this case. So therefore, unless the court has any questions for me, we submit on the briefs and I thank you for your time. Thank you, sir. Mr. Girardi? I agree with counsel in that instead of attempting to convince Mr. Missy Rockett to present himself for deposition, I should have immediately gone to the court and tried to find him in contempt to see if that would have had any effect on shaking him loose and appear for the court. Contempt of what order? Well, I guess I would have to make a motion to compel his attendance at a deposition and then his failure to appear. Well, first you would have to get service on him as a party. Then you could send him a notice of deposition. Then you would have to go under Rule 37 and get an order enforcing it. Then you could get an order, right? Correct, Your Honor. And the reason you didn't do that was? Because of the amount of time it took to serve. As pointed out, he wasn't served until November 23rd of 2011. But you started the action in 2010 and you knew that he was a prime defendant. Absolutely, and we immediately attempted to try to serve Mr. Missy Rockett and all the other defendants, spent thousands of dollars and authorized dozens of attempts on each of these people. But it was the impending criminal indictment that prevented them from ever appearing. And since this has all occurred, several of the defendants are in federal custody. Well, your opposing counsel makes the point that I'd like you to respond to, which is you may very well have proved that he was a very bad guy in relation to your clients, but that there is nothing that creates an issue of fact as to his client, CBRE, being a part of the bad things that Missy Rockett did. And so that connection, what is the connection that the deposition in your view demonstrated? It demonstrated that Mr. Missy Rockett made material misrepresentations of fact while an employee of Richard Ellis or CB Richard Ellis and an agent of my client, and he was not just an agent. So it's just the fact that he was employed that is the problem in your view? Well, it was the fact that he had held himself out as an investment specialist beyond real estate, and that he... But is there anything that suggests that that was authorized? I mean, if an employee of my grocery store, you know, holds themselves out to be an investment advisor, does that make the grocery store complicit without some demonstration that they intended to permit that? I don't... I think the fact that my clients relied on Mr. Missy Rockett's advice, whether it be to invest in real estate development, they weren't looking to buy a home. They were looking to invest capital. That doesn't answer my question. Is employment... I mean, your argument is he was employed by the Apelli's company, and therefore there's an issue of fact as to whether they were part of the scheme that you're alleging. But I guess my question is how can employment be enough? Does my, you know... What is it about that employment per se that creates an issue of fact? It was the position of trust between C.B. Richard Ellis and its clients and the recommendation of C.B. Richard Ellis through Mr. Missy Rockett. Mr. Missy Rockett was not a low-level employee. He was a business... land development specialist is what he held himself out as, and as a result... This wasn't about land development. Well, First Fidelity wasn't about anything valid. But invalid or not, it wasn't about land development, was it? No, it was simply an investment plan. So I'm back to my grocery checker. I would say that your analogy would be similar if the grocery store checker recommended a particular food that was sold by the grocery store, but not by their grocery store, but by a different grocery store. And so by referring my clients to a separate investment, whether it be land development or something else, my clients relied on the representations of Mr. Missy Rockett within the course and scope of his employment with C.B. Richard Ellis. What evidence is there that the course and scope of his employment included recommending non-real estate investments? What evidence is there? The evidence is in Mr. Biot's reliance on Mr. Missy Rockett's misrepresentations. But that could be a totally misplaced reliance without any objective basis. That's like saying, you know, he recommended I play red in Las Vegas. I apologize, I didn't... It's like saying, he recommended I play red or play craps in Las Vegas. So therefore, C.B.R.E. is liable. I think the similarity between investing in land and investing in a bond scheme is more similar than an investment in land or a bet in Vegas. Thank you, counsel. Your time has expired. The case just argued will be submitted for decision.
judges: O'scannlain, Graber, Bea